**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARIAM DAVITASHVILI, ADAM BENSIMON, and MIA SAPIENZA, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>GRUBHUB INC. (a/d/b/a SEAMLESS), DOORDASH INC., POSTMATES INC., and UBER TECHNOLOGIES, INC., in its own right and as parent of wholly owned subsidiary UBER EATS,<br><br>        Defendants. | No. 1:20-cv-03000 |
| PHILIP ELIADES, JONATHAN SWABY, JOHN BOISI, and NATHAN OBEY,<br><br>        Plaintiffs,<br><br>v.<br><br>GRUBHUB INC., UBER TECHNOLOGIES, INC., and POSTMATES INC.,<br><br>        Defendants. | No. 1:20-cv-05134 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE DAVITASHVILI PLAINTIFFS AND THE ELIADES PLAINTIFFS FOR CONSOLIDATION OF ACTIONS AND APPOINTMENT OF INTERIM LEAD COUNSEL**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 2

I.      RESTAURANT PLATFORMS ............................................................................... 2

II.     THE *DAVITASHVILI* ACTION ........................................................................... 2

III.    THE *ELIADES* ACTION ...................................................................................... 3

ARGUMENT .................................................................................................................... 4

I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED. ....................................... 4

II.     FRANK LLP AND RCF ARE THE PROPER INTERIM CLASS COUNSEL. ............... 6

        A.      The Appointment of Interim Class Counsel Will Protect the Proposed Class
                and Maximize the Efficient Administration of This Litigation and Any
                Similar Litigation. .................................................................................... 6

        B.      Counsel Easily Satisfy the Factors for Appointment as Interim Class Counsel and
                Will Properly Represent the Interests of the Proposed Class ........................... 8

                1.      Counsel have done extensive work in identifying and investigating the
                        claims and filing the Related Actions. .......................................... 9

                2.      Counsel has significant class action and antitrust experience. .............. 11

                3.      Counsel will commit all the resources necessary and appropriate to obtain
                        a maximum recovery for the proposed class. ................................... 15

CONCLUSION ................................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bernstein v. Cengage Learning, Inc.*,
 No. 1:18-cv-7877, 2019 WL 6324276 (S.D.N.Y. Nov. 26, 2019) ...................................... 7, 11

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
 252 F.R.D. 188 (S.D.N.Y. 2008) ..................................................................................... 4

*Carter v. Paschall Truck Lines, Inc.*,
 No. 5:18-cv-41, 2019 WL 1576572 (W.D. Ky. Apr. 11, 2019) ................................. 7

*Clifford v. TRON Found.*,
 No. 20-cv-2804 (S.D.N.Y. June 30, 2020) ................................................................ 13

*Deangelis v. Corzine*,
 286 F.R.D. 220 (S.D.N.Y. 2012) ............................................................................. 8

*Erwin-Smith v. K-Mart Corp.*,
 No. 96-cv-60, 1999 WL 429505 (N.D.N.Y. June 22, 1999) ..................................... 6

*Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*,
 Nos. 11-cv-6189, 11-cv-6201 (DLC) (S.D.N.Y.) ..................................................... 14

*Hartig Drug Co., Inc. v. Senju Pharm. Co. Ltd.*,
 No. 14-cv-719 (D. Del. Nov. 13, 2018) .................................................................... 11

*In re American Realty Capital Props., Inc. Litig.*,
 No. 1:15-mc-00040-AKH (S.D.N.Y.) ....................................................................... 14

*In re Apple iPhone Antitrust Litig.*,
 No. 11-cv-6714, 2012 WL 1514828 (N.D. Cal. Apr. 9, 2012) .................................. 7

*In re General Motors Corp. Sec. Litig.*,
 No. 05-cv-8088 (S.D.N.Y. Jan. 5, 2006) ................................................................... 12

*In re HSBC Bank USA, N.A., Debit Card Overdraft Fee Litig.*,
 No. 1:12-cv-5696, 2013 WL 3816597 (E.D.N.Y. July 22, 2013) ............................. 9

*In re Interest Rate Swaps Antitrust Litig.*,
 No. 16-mc-2704, 2016 WL 4131846 (S.D.N.Y. Aug. 3, 2016) ................................ 10

*In re Medco Health Sols., Inc., Pharm. Benefits Mgmt. Litig.*,
 No. 7:03-md-01508 (S.D.N.Y.) ................................................................................. 14

*In re Mun. Derivatives Antitrust Litig.*,
 252 F.R.D. 184 (S.D.N.Y. 2008) ............................................................................. 11

*In re Optical Disk Drive Antitrust Litig.*,
    No. 3:10-MD-2143 (N.D. Cal.) ............................................................. 12

*In re Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*,
    No. 05-md-1720, 2016 WL 8138988 (E.D.N.Y. Nov. 30, 2016) ............................................. 10

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
    No. 09-cv-7666, 2010 WL 1433316 (N.D. Ill. Apr. 7, 2010) ................................................. 11

*In re Straight Path Communications Inc. Consol. S'holder Litig.*,
    No. 2017-0486-SG (Del. Ch.) ............................................................. 14

*Jacobs v. Castillo*,
    612 F. Supp. 2d 369 (S.D.N.Y. 2009) ............................................................. 5

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990) ............................................................. 5

*Kleiman v. Wright*,
    No. 9:18-CV-80176-BB (S.D. Fla.) ............................................................. 13

*Leibowitz v. Ifinex Inc.*,
    No. 1:19-cv-09236-KPF (S.D.N.Y.) ............................................................. 13

*Schoers v. Pfizer, Inc.*,
    No. 00-cv-6121, 2001 WL 64742 (S.D.N.Y. Jan. 24, 2001) ............................................. 6

*Sheet Metal Contractors Ass'n of N. N.J. v. Sheet Metal Workers' Int'l. Ass'n*,
    978 F. Supp. 529 (S.D.N.Y. 1997) ............................................................. 5

*Szymczak v. Nissan N. Am., Inc.*,
    No. 10-cv-7493, 2012 WL 1877306 (S.D.N.Y. May 15, 2012) ............................................. 7

*Toohey v. Portfolio Recovery Assocs., LLC*,
    No. 15-cv-8098 (S.D.N.Y. July 16, 2020) ............................................................. 12

**Other Authorities**

Fed. R. Civ. P. 23(g)(3) ............................................................. 6

*Manual for Complex Litigation (Fourth)* § 21.11 (2004) ............................................................. 6

S. Gant, A. Michaelson & E. Normand, *The Hart- Scott-Rodino Act's First Amendment Problem*, 103 CORNELL L. REV. 1 (2017) ............................................................. 14

Plaintiffs Mariam Davitashvili, Adam Bensimon, and Mia Sapienza (the "Davitashvili Plaintiffs") and Plaintiffs Philip Eliades, Jonathan Swaby, John Boisi, and Nathan Obey (the "Eliades Plaintiffs," and together with the Davitashvili Plaintiffs, "Plaintiffs"), respectfully submit this memorandum of law under Federal Rules of Civil Procedure 42(a) and 23(g)(3) in support of their motion to consolidate these two matters and appoint Frank LLP and Roche Cyrulnik Freedman LLP ("RCF") (together "Counsel") as interim class counsel.

## **INTRODUCTION**

On behalf of restaurant consumers (the "Class"), Plaintiffs allege that in operating their market-leading online food-delivery platforms, Defendants have violated Sections 1 and 2 of the Sherman Act by imposing on restaurants anticompetitive most-favored nation provisions ("MFNs").  Plaintiffs bring their claims in two actions (the "Related Actions"). The Davitashvili Plaintiffs, represented by Frank LLP, filed the first complaint; the Eliades Plaintiffs, represented by RCF, filed the second complaint.

Seeking to streamline the Related Actions and any related litigation that these complaints may prompt, Plaintiffs respectfully ask the Court to consolidate the Related Actions and to appoint Counsel as interim class counsel to protect the interests of the proposed Class and to ensure the fair, effective, and efficient adjudication of these claims. This relief would grant Counsel the authority to continue to collectively coordinate service of process and scheduling with all Defendants, as well as any future motion to dismiss briefing, discovery, or other litigation scheduling with the parties. In addition to furthering the best interests of the proposed Class, appointing Counsel as interim class counsel will afford all parties and the Court procedural clarity, and foreclose further and redundant complaints with overlapping or competing class definitions.

Plaintiffs respectfully submit that Counsel well satisfy the relevant factors governing appointment. First, Counsel have performed extensive work in identifying and investigating the claims asserted in both actions. Second, Counsel possess substantial experience with complex litigation and class actions. Third, Counsel have extensive expertise with respect to antitrust matters, especially those involving sophisticated technologies. Fourth, Counsel have demonstrated that they will commit all necessary resources to obtain the maximum recovery for the proposed Class. Finally, Counsel's vigorous prosecution of the case to date demonstrates that the proposed Class will be represented by a highly capable and dedicated team of litigators.

## FACTUAL BACKGROUND

### I. RESTAURANT PLATFORMS

The collective Defendants, Grubhub Inc. ("Grubhub"), DoorDash Inc. ("Doordash"), Postmates Inc. ("Postmates"), and Uber Technologies, Inc. ("Uber"), offer online platforms ("Restaurant Platforms") that "enable consumers to search for participating restaurants in a particular locality and order food for takeout or delivery from those restaurants." (Eliades Compl. ¶ 21.) As a general matter, Restaurant Platforms "derive revenue from both restaurants and consumers." (*Id.* ¶ 36.) In particular, "[w]hen a customer orders from a restaurant through a Restaurant Platform, the platform typically charges the restaurant a commission," which is typically calculated based on a percentage of the total price of the customer's order. (*Id.* ¶ 37.) At the same time, Restaurant Platforms typically charge consumers a percentage of the total price of their order. (*See id.* ¶¶ 39-40.)

### II. THE *DAVITASHVILI* ACTION

On April 13, 2020, on behalf of themselves and putative nationwide classes of persons who purchased items directly from certain restaurants, the Davitashvili Plaintiffs filed their complaint against Grubhub, Doordash, Uber, and Postmates. (*See* Davitashvili Compl. ¶¶ 11-13,

2

95.) The Davitashvili Plaintiffs allege that Defendants have monopoly power in the "Meal Delivery Market," which is defined as a "distinct two-sided market[] defined by geographic area, where one side is comprised of restaurants that sell meals and beverages to be delivered to the other side, consumers who ordered those items." (*Id.* ¶¶ 2-3, 33.) They further allege that "Defendants use their market power to impose unlawful price restraints in their merchant contracts," which include provisions that "requir[e] uniform prices for restaurants' menu items throughout all purchase platforms." (*Id.* ¶¶ 4-5.) In other words, Defendants contractually prohibit restaurants that sell through Defendants' platforms from offering lower prices to consumers who purchase directly from those restaurants.

The Davitashvili Plaintiffs allege that these provisions harm consumers who purchase meals directly from restaurants because Defendants impose "high fees" on restaurants for sales made through Defendants' platforms. (*Id.* ¶ 7.) As a result, "[r]estaurants must calibrate their prices" for such sales "in order not to lose money on those sales." (*Id.* ¶ 8.) "Defendants' unlawful [contractual provisions] then force restaurants to also charge those higher prices to" consumers who purchase directly from those restaurants. (*Id.* ¶ 7.) Based on the foregoing allegations, the Davitashvili Plaintiffs assert claims under the Sherman Act for (1) monopolization in violation of Section 2; (2) conspiracy to monopolize in violation of Section 2; and (3) price fixing and restraint of trade in violation of Section 1. (*See id.* ¶¶ 109-35.)

## III.   THE *ELIADES* ACTION

On July 6, 2020, on behalf of themselves and putative classes (both nationwide and local) of persons who purchased items from restaurants bound by contractual provisions imposed by Grubhub, Uber, and Postmates, the Eliades Plaintiffs filed their complaint against each of those Defendants. (*See* Eliades Compl. ¶¶ 8-11, 133-37.) The Eliades Plaintiffs allege that Grubhub, Uber, and Postmates have leveraged their position in the market for delivery and takeout orders,

as well as the narrower market for orders through Restaurant Platforms, to force restaurants to accept MFNs that prohibit "restaurants from offering lower prices for sales outside [Defendants'] platforms." (*Id.* ¶¶ 5, 42, 46.)

These provisions harm consumers in three main ways. First, while the high commission rates that Defendants charge "force restaurants to increase the prices of items listed on Defendants' platforms," Defendants' MFNs "force restaurants to charge consumers who buy directly from restaurants, or through a competing Restaurant Platform, *those same inflated prices*." (*Id.* ¶ 117.) Second, Defendants' MFNs prevent price competition for takeout and delivery orders between Defendants, competing Restaurant Platforms, and restaurants. (*See id.* ¶¶ 97, 111.) Third, Defendants' MFNs enable Defendants to increase the commissions that they charge to restaurants. (*See id.* ¶¶ 97-104.) The Eliades Plaintiffs assert six claims under federal and state antitrust laws: (1) restraint of trade in violation of Section 1 of the Sherman Act and state-law analogues; (2) monopolization in violation of Section 2 of the Sherman Act and state-law analogues; and (3) attempted monopolization in violation of Section 2 of the Sherman Act and state-law analogues.

## ARGUMENT

### I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED.

Plaintiffs propose the consolidation of the Related Actions and any further related actions filed in or transferred to this Court, pursuant to Federal Rule of Civil Procedure 42(a).

"Consolidation is appropriate where actions before the Court involve common questions of law or fact." *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008). The district courts have "broad discretion" in determining whether consolidation would be appropriate and should "balance the interest of judicial convenience against any delay, confusion, or prejudice that might result from such consolidation." *Sheet*

4

*Metal Contractors Ass'n of N. N.J. v. Sheet Metal Workers' Int'l. Ass'n*, 978 F. Supp. 529, 531 (S.D.N.Y. 1997) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-1285 (2d Cir. 1990)). In this Circuit, courts "have taken the view that considerations of judicial economy favor consolidation." *Johnson*, 899 F.2d at 1285; *see also Jacobs v. Castillo*, 612 F. Supp. 2d 369, 373 (S.D.N.Y. 2009) (explaining that "consolidation of cases with common questions of law or fact is favored 'to avoid unnecessary costs or delay,' and to 'expedite trial and eliminate unnecessary repetition and confusion'") (internal citations omitted).

Consolidation is particularly appropriate here. The Related Actions assert claims arising from the same set of facts: Defendants' use of their power in the relevant markets to impose MFNs on restaurants. (*Compare* Eliades Compl. ¶¶ 42-48, *with* Davitashvili Compl. ¶¶ 4-5, 80-85.) The Related Actions both allege that those MFNs prohibit restaurants that sell through Defendants' platforms from charging lower prices outside of those platforms (*e.g.*, to consumers who buy directly from restaurants), and thus limit price competition between Defendants and restaurants. (*Compare* Eliades Compl. ¶¶ 5-6, *with* Davitashvili Compl. ¶¶ 5, 10.)

The Related Actions also assert substantially overlapping legal claims arising from the same set of operative facts. Both complaints allege that by imposing MFNs on restaurants, Defendants violated Section 1 of the Sherman Act. (*Compare* Eliades Compl. ¶¶ 159-67, *with* Davitashvili Compl. ¶¶ 127-35.) Both complaints allege that, through the same conduct, Defendants monopolized the market for takeout and delivery orders in violation of Section 2 of the Sherman Act. (*Compare* Eliades Compl. ¶¶ 192-98, *with* Davitashvili Compl. ¶¶ 109-17.) Both complaints also define similar classes of individuals who were harmed by Defendants' anticompetitive conduct and bring claims on behalf of individuals who purchased directly from

restaurants bound by Defendants' MFNs. (*Compare* Eliades Compl. ¶¶ 132-37, *with* Davitashvili Compl. ¶ 95.) In addition, to address discrete material differences in the legal claims asserted, Plaintiffs and Counsel have agreed to coordinate to file a single consolidated class action complaint.

Because the Related Actions arise from the same set of facts and involve overlapping legal claims, consolidation would promote judicial economy. These efficiency benefits are enhanced by the fact that the Related Actions remain in the early stages of litigation—Defendants have not yet responded to either Complaint. *See, e.g.*, *Schoers v. Pfizer, Inc.*, No. 00-cv-6121, 2001 WL 64742, at *1 (S.D.N.Y. Jan. 24, 2001) ("Any alleged confusion does not outweigh efficiency concerns, which would clearly be met through consolidation at this early stage of litigation."). Moreover, consolidation would not cause any delay or prejudice because the Related Actions are at the same procedural stage. *See Erwin-Smith v. K-Mart Corp.*, No. 96-cv-60, 1999 WL 429505, at *3 (N.D.N.Y. June 22, 1999) (noting that "consolidation will not cause delay because both cases are at the same stage of preparation for trial").

## II.   FRANK LLP AND RCF ARE THE PROPER INTERIM CLASS COUNSEL.

### A.   The Appointment of Interim Class Counsel Will Protect the Proposed Class and Maximize the Efficient Administration of This Litigation and Any Similar Litigation.

The Court may "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Manual for Complex Litigation (Fourth)* § 21.11 (2004). Interim class counsel's role is thus identical to the role of class counsel in a certified class action: to "fairly and adequately represent the interests of

6

the class." Fed. R. Civ. P. 23(g)(4). To that end, the appointment of interim class counsel ensures that actions "are administered efficiently, the claims of named plaintiffs and the putative class members are properly prosecuted, and redundant work is minimized." *Szymczak v. Nissan N. Am., Inc.*, No. 10-cv-7493, 2012 WL 1877306, at *2 (S.D.N.Y. May 15, 2012).

These benefits exist even when there is only a single action pending, because appointing interim class counsel "will minimize the risk of duplicative filings and allow the Court to consolidate related filings more efficiently." *Bernstein v. Cengage Learning, Inc.*, No. 18-cv-7877, 2019 WL 6324276, at *2 (S.D.N.Y. Nov. 26, 2019). Similarly, even where there is only a single applicant for interim class counsel, as there is here, the appointment will provide benefits for the class, the court, and the litigation as a whole. *See, e.g.*, *In re Apple iPhone Antitrust Litig.*, No. 11-cv-6714, 2012 WL 1514828, at *1 (N.D. Cal. Apr. 9, 2012) ("[I]n light of the Court's finding that [counsel] can adequately represent the interest of the class, and insofar as no other representative has sought appointment as class counsel, the Court finds that [counsel] should be appointed as interim class counsel."); *Carter v. Paschall Truck Lines, Inc.*, No. 5:18-cv-41, 2019 WL 1576572, at *4 (W.D. Ky. Apr. 11, 2019) (appointing sole applicant as interim class counsel as "adequate under Rule 23(g)(1) and (4)").

Under these principles, the appointment of interim class counsel will benefit this litigation. Without such appointment, there is a risk of duplicative complaints raising identical causes of actions under federal and state antitrust laws on behalf of overlapping classes. These circumstances would leave named plaintiffs, putative class members, Defendants, and the Court without clarity or efficiency as to motion practice, discovery, class certification, or negotiating a settlement. Plaintiffs and their counsel would be unable to speak with one voice on behalf of the proposed Class, and Defendants would face multiple adversaries taking potentially inconsistent

procedural or substantive positions while pursuing identical (or nearly identical) claims. Straightforward litigation issues, including motions to dismiss and discovery disputes, would require the Court to consider multiple redundant filings and issue multiple redundant rulings.

Appointing interim class counsel will address these concerns and eliminate any such inefficiencies, as Counsel has already demonstrated its commitment to ensuring this litigation proceeds in a streamlined manner. Shortly after filing the Eliades Complaint, RCF coordinated with Frank LLP and agreed to move the Court to consolidate both actions, to prosecute jointly Plaintiffs' claims on behalf of a consolidated Class, and to seek the relief requested in this motion. In conjunction with this private ordering, Counsel coordinated with Defendants' counsel and negotiated a briefing schedule for a consolidated class action complaint. (*See* No. 1:20-cv-3000, ECF No. [17-1]; No. 1:20-cv-5134, ECF No. [15].)

Counsel will continue to ensure efficient adjudication of this litigation by continuing to work with Defendants to coordinate discovery. This appointment will foreclose the filing of additional complaints that would needlessly complicate this litigation, undermine the interests of proposed Class members, and strain judicial resources.

### B. Counsel Easily Satisfy the Factors for Appointment as Interim Class Counsel and Will Properly Represent the Interests of the Proposed Class.

"Candidates for interim class counsel are evaluated under the same rubric as potential counsel for certified classes." *Deangelis v. Corzine*, 286 F.R.D. 220, 223 (S.D.N.Y. 2012). "In selecting class counsel, Rule 23 requires a court to consider '(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.'" *Id*. (quoting Fed. R. Civ. P. 23(g)(1)(A)) (alteration omitted).

"Additionally, a court 'may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.'" *Id*. (quoting Fed. R. Civ. P. 23(g)(1)(A)) (alteration omitted). This analysis applies even if only one applicant seeks appointment as interim class counsel. *See In re HSBC Bank USA, N.A., Debit Card Overdraft Fee Litig.*, No. 1:12-cv-5696, 2013 WL 3816597, at *10 (E.D.N.Y. July 22, 2013).

           1.    <u>Counsel have done extensive work in identifying and investigating the claims and filing the Related Actions</u>.

In preparing and filing the Related Actions, Counsel committed significant resources to identifying and investigating the claims at issue. Frank LLP was the first to identify the MFNs at issue, examine their anticompetitive effect on the relevant markets, and file an initial complaint. Gregory A. Frank first became aware of potential antitrust violations by Defendants in Spring 2019, through conversations with restaurant owners, consumers, and news reports concerning the problems that restaurants were having with Restaurant Platforms.

In June 2019, Counselman Mark Gjonaj, Chairman of the New York City Council's Small Business Committee ("NYCC SBC"), requested that Mr. Frank join his investigation into potential antitrust violations by Defendants. On June 27, 2019, Mr. Frank testified before the NYCC SBC, reporting the initial findings of his investigation. Among other things, Mr. Frank found that Defendant Grubhub's substantial monopoly power in the New York City meal delivery market resulted in unearned economic rents and increased consumer prices.

In January 2020, Mr. Frank discovered the specifically alleged violations complained of herein while reviewing the form contracts that Defendants require restaurants to sign. As a result of Mr. Frank's findings, on February 27, 2020, Councilman Gjonaj and Councilman Francisco P. Moya introduced Bill 1907-2020, which would ban in the City of New York the menu price

controls discovered by Mr. Frank. Mr. Frank testified before the NYCC SBC as an antitrust expert in support of Bill 1907 on April 29, 2020.

Accordingly, Frank LLP did not bring the *Davitashvili* action by "piggybacking" off another complaint or government investigation. *In re Interest Rate Swaps Antitrust Litig.*, No. 16-mc-2704, 2016 WL 4131846, at *3 (S.D.N.Y. Aug. 3, 2016) (finding that "the first Rule 23(g) factor compellingly favors appointment of … interim co-lead counsel" that "filed the first class action complaint" and "did so not by piggybacking on an existing government investigation or enforcement action, but by undertaking an independent investigation").

In preparing and filing the *Eliades* action, RCF spent three months extensively investigating the conduct alleged in the Eliades Complaint. This investigation included work with expert economists, factual research regarding the relevant product and geographic markets, detailed review of published economic research concerning MFN provisions imposed by online platforms, and a thorough review of applicable law. This work greatly benefited the proposed Class, as RCF (1) identified additional claims that will strengthen the Class's chances of surviving a motion to dismiss, including an attempted monopolization claim and claims under the laws of states that have repealed the *Illinois Brick* doctrine; (2) refined the relevant geographic markets for the Class's Section 2 claims; and (3) obtained crucial factual support regarding the extent of the anticompetitive effects of Defendants' conduct. *See In re Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*, No. 05-md-1720, 2016 WL 8138988, at *2 (E.D.N.Y. Nov. 30, 2016) (listing "quality of the pleadings" as a proper consideration for appointing interim lead counsel); *see also Moradi v. Adelson*, No. 11-cv-490, 2011 WL 5025155, at *2 (D. Nev. Oct. 20, 2011) (considering whether "[b]oth parties adequately plead allegations that should survive a motion to dismiss"); *In re Plasma-Derivative Protein Therapies Antitrust*

*Litig.*, No. 09-cv-7666, 2010 WL 1433316, at *6 (N.D. Ill. Apr. 7, 2010) (appointing firm that "filed a detailed amended complaint which contains allegations that may prove critical to overcoming a motion to dismiss"). This extensive and productive investigatory work demonstrates the willingness and ability of Counsel to effectively prosecute the instant claims on behalf of the proposed Class.

2.     Counsel has significant class action and antitrust experience.

Counsel has the necessary experience with class actions, complex litigation, and antitrust law to effectively litigate this action on behalf of the Class. *See, e.g.*, *Bernstein*, 2019 WL 6324276, at *1 (finding counsel adequate for their "extensive experience in litigating class actions in this District and elsewhere, and in complex commercial disputes"); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (relying on declarations and finding "that each applicant firm has sufficiently demonstrated knowledge of antitrust law to serve effectively as interim lead counsel").

Gregory A. Frank of Frank LLP has served the NYCC SBC as an antitrust expert concerning Restaurant Platforms for over a year. Most recently, Mr. Frank served as co-lead counsel for a class of pharmaceuticals purchasers alleging unlawful monopolization for the eye treatment gatifloxacin, *Hartig Drug Co., Inc. v. Senju Pharm. Co. Ltd.*, No. 14-cv-719 (D. Del. Nov. 13, 2018) (confirming appointment and approving $9 million settlement). Previously, Mr. Frank represented several large non-profit hospitals in New York City for damages they suffered as a result of an alleged antitrust conspiracy to limit the supply of life-saving plasma-derivative protein therapies, obtaining a settlement of $120 million on behalf of the class. *See In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09-cv-7666 (N.D. Ill.). Mr. Frank represented a class representative in an action alleging the unlawful price fixing of optical drives for CDs, DVDs, and Blu-ray disks by their manufacturers, which include Sony, Panasonic, and Hitachi,

11

ultimately obtaining $205 million in recovery for the class. *See In re Optical Disk Drive Antitrust Litig.*, No. 3:10-MD-2143 (N.D. Cal.).

Just yesterday, Mr. Frank was appointed Lead Counsel of a settlement class in this District on behalf of a class of over 20,000 consumers alleging debt collection violations. Mr. Frank recovered the statutory maximum under federal law, plus equitable relief in the form of credit-report repair, on claims against one of the country's largest debt buyers. *Toohey v. Portfolio Recovery Assocs., LLC*, No. 15-cv-8098 (S.D.N.Y. July 16, 2020) (confirming appointment and approving settlement). Since initiating this litigation, Mr. Frank has been an outspoken advocate nationwide for the ban of menu price controls by Restaurant Platforms, having been cited in such publications as the New York Times, the New York Post, Bloomberg, Time, and others.

Marvin L. Frank, Frank LLP's Managing Partner, has been successfully litigating class actions on behalf of consumers, investors, and small businesses for three decades. Courts appointing Marvin Frank lead or co-lead counsel have frequently lauded his credentials in his practice area. *See, e.g.*, *In re General Motors Corp. Sec. Litig.*, No. 05-cv-8088 (S.D.N.Y. Jan. 5, 2006) (commending Mr. Frank's experience upon confirming his appointment, in shareholder class action with $303 million recovery). In addition to other such appointments, Marvin Frank served as lead or co-lead counsel for plaintiffs in *Hartig Drug* and *Toohey*, both described above.

Moreover, Mr. Frank has frequently authored or co-authored articles about complex litigation. *See, e.g.*, *Securities Class Actions: Improving Corporate Governance Through Accountability*, Int'l Bar Assoc. Secs. Law Comm. Newsletter (Aug. 2010).

Although RCF is a relatively new firm (formed in January 2020), it has already been appointed to lead many class actions in this District. Partners Kyle Roche and Edward Normand

were recently appointed (along with two other firms) to lead a large class action in this District against a prominent crypto-assets exchange engaged in market manipulation in violation of antitrust laws (as well as other federal and state laws). *See Leibowitz v. Ifinex Inc.*, No. 1:19-cv-09236-KPF (S.D.N.Y.). RCF has also been appointed lead counsel in a number of additional class actions involving novel issues relating to crypto-assets. *See, e.g.*, *Clifford v. TRON Found.*, No. 20-cv-2804 (S.D.N.Y. June 30, 2020) (order appointing RCF co-lead counsel).

RCF's lawyers have decades of experience representing plaintiffs in and defending class actions and antitrust matters.[1] Kyle Roche has significant experience litigating cases that require a deep understanding of technology and economics. In addition to the lead counsel appointments described above, Mr. Roche is the co-lead attorney in one of the largest litigations relating to crypto-assets in the United States, *Kleiman v. Wright*, No. 9:18-CV-80176-BB (S.D. Fla.), where the rightful ownership of billions of dollars' worth of bitcoin and bitcoin-related intellectual property rights is at stake. In addition to his experience in complex commercial litigation, Mr. Roche has published multiple articles on the intersection of technology and law and is a frequent speaker on the topic. *See, e.g., Bitcoin: Order without Law in the Digital Age*, 94 INDIANA L.J. 1497 (2019); *Why Bitcoin is Booming*, WALL ST. J. (July 10, 2017).

Edward Normand represented both plaintiffs and defendants in a wide variety of complex litigation, including class action and antitrust matters, at Boies Schiller Flexner LLP for more than two decades. In addition to other such matters, Normand represented Vanguard in an opt-out from the recent securities class action against ARCP, *In re American Realty Capital Props., Inc. Litig.*, No. 1:15-mc-00040-AKH (S.D.N.Y.); represented HSBC in consolidated securities

---

[1] A description of RCF's qualifications to serve as interim class counsel is set forth at Exhibit 1 to the accompanying Declaration of Kyle W. Roche.

actions arising out of the sale of residential mortgage-backed securities, *Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*, Nos. 11-cv-6189, 11-cv-6201 (DLC) (S.D.N.Y.); represented a class of employee health benefit plans in an ERISA action against Merck-Medco arising out of the defendant's management of pharmaceutical benefits, *In re Medco Health Sols., Inc., Pharm. Benefits Mgmt. Litig.*, No. 7:03-md-01508 (S.D.N.Y.); is representing IDT Corporation against a putative class of plaintiffs relating to Verizon's acquisition of Straight Path Communications, *In re Straight Path Communications Inc. Consol. S'holder Litig.*, No. 2017-0486-SG (Del. Ch.); represented ValueAct Capital against the DOJ's allegations that the company violated the HSR Act in connection with acquisition of certain voting securities; and has written regarding the implications of the operation of the HSR Act in conjunction with the antitrust laws, the First Amendment, and Equal Protection Clause, *see* S. Gant, A. Michaelson & E. Normand, *The Hart-Scott-Rodino Act's First Amendment Problem*, 103 CORNELL L. REV. 1 (2017).

Both Frank LLP and RCF place significant emphasis on providing substantive opportunities for junior lawyers. For example, Asher Hawkins, an associate at Frank LLP and counsel of record herein, has defended numerous depositions, briefed successful oppositions to motions to dismiss, and has utilized Freedom of Information requests to obtain discovery against corporate defendants. Prior to his legal career, Mr. Hawkins had a decade-long career as a journalist specializing in legal affairs and investigative reporting, working for publications including *Forbes* magazine.

Likewise, in just the past few months, RCF associates have deposed witnesses, argued in court, and have presented at international conferences. RCF associate Stephen Lagos, counsel of record in this litigation, has published work in a peer-reviewed economics journal, worked as an economic consultant, and worked as a teaching assistant in Antitrust Law while in law school.

14

Plaintiffs respectfully submit that this wealth of experience and qualification for the subject matter of this action demonstrate the collective abilities of Counsel to provide the proposed Class with the highest caliber of representation.

        3.    <u>Counsel will commit all the resources necessary and appropriate to obtain a maximum recovery for the proposed class.</u>

Frank LLP and RCF possess the necessary resources to prosecute this litigation effectively for the proposed Class through discovery, certification, trial, and appeal. Collectively, Counsel have over twenty attorneys who are committed to litigating this action. In addition to the staffing and experience summarized above, Counsel will draw on their network of discovery specialists, analysts, investigators, economists, and experts.

## **<u>CONCLUSION</u>**

Plaintiffs respectfully request, for the reasons set forth above, that the Court consolidate these matters and appoint Frank LLP and RCF as interim class counsel.

Dated: July 17, 2020

                            Respectfully submitted,

By: */s/ Gregory A. Frank*                     By:  */s/ Kyle W. Roche* 
Gregory A. Frank                              Kyle W. Roche 
Marvin L. Frank                                Edward Normand 
Asher Hawkins                                 Stephen Lagos 
FRANK LLP                                     ROCHE CYRULNIK FREEDMAN LLP 
370 Lexington Avenue, Suite 1706           99 Park Avenue, 19th Floor 
New York, New York 10017                  New York, NY 10016 
Tel: (212) 682-1853                            kyle@rcfllp.com 
Fax: (212) 682-1892                         tnormand@rcfllp.com 
info@frankllp.com                             slagos@rcfllp.com 

*Attorneys for the Davitashvili Plaintiffs*      *Attorneys for the Eliades Plaintiffs*